The STATE of Ohio, Appellee,

v.

CLARK, Appellant.

[Cite as *State v. Clark* (1991), 74 Ohio App.3d 151.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900209.

Decided May 15, 1991.

152

*Arthur M. Ney, Jr.,* Prosecuting Attorney, and *William E. Breyer,* for appellee.

*Michael L. Walton,* for appellant.

*Per Curiam.*

The defendant-appellant, James E. Clark, appeals from his convictions on two counts of aggravated murder, two counts of aggravated burglary, and one count of aggravated robbery. He asserts two assignments of error: that the trial court erred by failing to grant his motion for a mistrial after the prosecutor improperly commented to the jury about his failure to testify, and that his convictions on both counts of aggravated murder were against the manifest weight of the evidence.

■ We conclude that Clark's convictions on all counts were supported by substantial evidence and were not contrary to the weight of the evidence. We agree, though, that the prosecutor commented directly and adversely on Clark's refusal to testify. We hold the improper comment harmless error with respect to the aggravated robbery and aggravated burglary counts. Because we cannot say, beyond a reasonable doubt, that the comment did not contribute to Clark's convictions for aggravated murder, we reverse the trial court's judgment in part and remand for a new trial on the aggravated murder counts.

## I

On September 9, 1989, the ninety-one-year-old body of George Donnelly was found in his apartment. The body was lying on the bed, bound wrists to ankles by knotted socks. Strewn on the floor around the body were various papers, the victim's moneyless wallet and his dentures. The pockets of the victim's doffed trousers had been pulled out. Situated at the foot of his bed, bearing a dust imprint, was an empty TV cart where, according to the testimony of a neighbor, a television was normally placed. Officer Kerry Rowland, the police homicide specialist who investigated the scene, testified that, based upon his experience, the apartment looked "ransacked."

The day before Donnelly's body was found, Wilbur Frye, the tenant living in the apartment next door to Donnelly, reported a burglary. Investigation revealed that the burglar had entered by breaking through a bathroom window, leaving on the sill a palm print which was lifted by a police fingerprint specialist.

Clark had previously lived with his girlfriend in the apartment directly above Donnelly's. Mark Schnuck, another tenant in the building who knew both Clark and Donnelly, testified that he spoke with Clark on two separate occasions in the vicinity of the apartment building only days before Donnelly was found murdered. According to Schnuck, Clark inquired about Donnelly on both occasions and "mentioned that it was a wonder somebody hadn't done anything to him because he was an easy man." Schnuck also testified that within a few days prior to Donnelly's murder Clark asked him what kind of articles Donnelly had in his apartment.

After interviewing both Schnuck and Clark's previous girlfriend, Officer Rowland had Clark's fingerprint compared with a latent print lifted from a medical card found among the items strewn on Donnelly's floor. In the opinion of the police fingerprint specialist, the two prints matched. Clark's print was also determined to match the print recovered from the window sill of Wilbur Frye's apartment.

Clark was subsequently arrested and interrogated. According to Officer Rowland, Clark denied knowing Donnelly or anything about his murder until told that the police could prove that he had been in Donnelly's apartment. Officer Rowland testified that Clark then conceded that he had known Donnelly but had not been in his apartment in over a year. After a discussion involving Clark's alleged use of cocaine, Officer Rowland then proposed to Clark that he had gone into Donnelly's apartment but not with the intent to kill him. According to Officer Rowland, Clark nodded "yes" but refused to verbalize his response.

Officer Rowland testified that Clark was then asked whether he was denying that he went inside Donnelly's apartment and tied him up, to which Clark shook his head "no." Furthermore, according to Officer Rowland, Clark then shook his head "no" when asked whether he was denying that he was responsible for Donnelly's death, and then nodded "yes" when Officer Rowland proposed to him that he had gone into Donnelly's apartment to get some items to support his cocaine habit.

Dr. Robert Pfalzgraf, deputy coroner for Hamilton County, testified that an external examination of Donnelly's body showed major bruising in the right chest region, as well as bruising on the hands, and a fracture to the cartilage of the windpipe. He described the body as "cathetic," meaning "abnormally thin" or "malnourished." According to Dr. Pfalzgraf, an autopsy revealed multiple rib fractures and internal bleeding. He theorized that one blow or multiple blows placed on top of each other caused the injuries to the chest, and he stated that the force demonstrated by the injuries suggested that the blows were not simply caused by punches. Rather, he postulated that the force of the impact was consistent with a foot stamped on the chest or a knee thrust forcefully on the chest in an act of restraint after Donnelly had been thrown to the ground or against the wall. He stated further that the fracture to Donnelly's windpipe was consistent with a stranglehold or "forceful manipulation" of the neck, and that the bruises on Donnelly's arms could have been caused by his defending himself or bumping into objects. He testified that death was due to internal bleeding from the trauma to the chest and probably resulted in a matter of minutes, although there was an "outside chance" that Donnelly lived for half an hour to an hour after the blows were struck. Dr. Pfalzgraf concluded that Donnelly's death was a homicide but he also conceded that the physical evidence could not establish whether Donnelly was dead before he was tied up or whether his homicide was intentional.

At the close of the state's evidence, Clark's trial attorney made an unsuccessful Crim.R. 29 motion for acquittal and then rested without presenting any evidence. The jury found Clark guilty on all counts, including two counts

of aggravated murder with separate specifications for the aggravated robbery and aggravated burglary of George Donnelly, separate and independent counts for the aggravated burglary and aggravated robbery of George Donnelly, and, finally, an additional count for the aggravated burglary of Wilbur Frye.

## II

In his first assignment of error, Clark asserts that the trial court erred by failing to grant a mistrial after the prosecutor, in his final argument to the jury, commented on his failure to testify. The alleged infringement occurred during that part of the prosecutor's argument in which he was addressing the element of the aggravated murder charges which required the state to prove that Clark had purposely caused Donnelly's death. The prosecutor, after recounting the circumstances of Donnelly's death and the evidence of the condition of the body, urged the jury:

"Think about the way George Donnelly was tied up. That's a circumstance you can consider. That's a circumstance you can look at in determining its purpose. Think about the way that wound was on his body. Think about the way that got there. It got there by way of some blunt trauma. One blunt object trauma. Think about the way some blunt object was used as a weapon.

"We don't know what it was. We weren't there. The only two people that were there was James Clark and George Donnelly. *George can't talk, Clark won't.* But we do know it was some object, some blunt object. Whether it be a foot consistent with a stomping or some other object. But it was used as a weapon." [1] (Emphasis added.)

Initially, we must determine whether the remark in question, "George can't talk, Clark won't" was, in fact, a comment adversely directed to Clark's decision not to testify. Such comments are, of course, prohibited by the Fifth Amendment. *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. Clark argues that the comment in question directly refers to his failure to take the stand, while the state contends that the comment was intended only to refer to Clark's refusal to verbalize certain responses during the interrogation following his arrest.

Whether a prosecutor's comment violates a defendant's Fifth Amendment right not to testify is a federal question to be judged by federal constitutional law. The federal courts have divided improper-comment cases into two

---

1. Counsel for Clark objected to this statement and moved for a mistrial at the close of the prosecutor's argument on the same constitutional grounds as are advanced here. The doctrine of "plain error," therefore, has no application to this appeal.

categories. The first category involves cases in which the prosecutor or court commented directly and adversely on the defendant's failure to testify. In the second category of cases the alleged infringement consists of statements which refer, if at all, only obliquely to the defendant's decision not to take the stand. The federal courts have developed, and the Ohio Supreme Court has recognized as "helpful," a two-prong analysis to be applied to the second category of cases to determine whether a comment is improper: "Whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Butler v. Rose* (C.A.6, 1982), 686 F.2d 1163. See, also, *State v. Ferguson* (1983), 5 Ohio St.3d 160, 162, 5 OBR 380, 382, 450 N.E.2d 265, 267 (citing *State v. Cooper* [1977], 52 Ohio St.2d 163, 173, 6 O.O.3d 377, 382, 370 N.E.2d 725, 733).

The state would have the comment in question judged by the standards of the second category and construed as one unintended to refer to Clark's refusal to testify and necessarily not understood that way by the jury. We cannot accept this proposition. If, as the state argues, the prosecutor only intended to comment on Clark's alleged refusal to verbalize certain responses during his interrogation, then he should have said, "George can't talk, Clark wouldn't." Instead the prosecutor used the word "won't," meaning "will not." To say that someone will not talk connotes a present unwillingness to speak. Given the prosecutor's choice of words, we conclude that, no matter what his subjective intent may have been, his manifest intent was to comment on Clark's decision not to testify. Moreover, we believe that the comment, phrased as it was and coming when it did, would naturally and necessarily have been construed by the jury as a comment on Clark's decision not to take the stand.

We note, moreover, that the Sixth Circuit Court of Appeals in *Butler*, *supra*, made clear that such expressions as "George can't talk, Clark won't" constitute direct references to the defendant's refusal to testify. In *Butler*, the court gave two examples of what it considered direct and adverse comments by prosecutors on a defendant's right to silence. The first example was a comment by the prosecutor in *Griffin*, *supra:* "These things [the defendant] has not seen fit to take the stand and deny or explain. * * * *Essie Mae is dead, she can't tell you her side of the story. The defendant won't.*" (Emphasis added.) *Butler, supra*, at 1169. The second example was a comment by the prosecutor in *Rachel v. Bordenkircher* (C.A.6, 1978), 590 F.2d 200: " 'Now we will never know what happened to this boy Trent before he was choked up there * * *. We will never know, *these men [the defendants] won't tell us.* The only other man who could tell us is dead and in his grave.' " (Emphasis added.) *Butler, supra*, at 1174. Both these comments

are strikingly similar in content and tone to the comment in the case *sub judice*.[2]

### III

Not every improper prosecutorial comment on a defendant's silence requires the trial court to declare a mistrial. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The standard of review developed by the United States Supreme Court requires the state in this case to demonstrate beyond a reasonable doubt that the prosecutor's comment did not contribute to each of Clark's convictions. *Id.* at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710; see, also, *State v. Newton* (Feb. 15, 1978), Hamilton App. No. C–77315, unreported.

The case against Clark has been previously set forth. Although largely circumstantial, the evidence of guilt on the aggravated burglary and aggravated robbery charges is overwhelming. Clark's fingerprint put him in Donnelly's apartment and in contact with one of the objects found strewn on the floor, presumably by the perpetrator. His palm print connected him with the window through which Wilbur Frye's apartment had been burglarized only a day before. Donnelly's apartment gave the appearance of being "ransacked" to an experienced officer, and there was strong circumstantial evidence that a television set had been stolen and the contents of Donnelly's wallet and trousers pilfered. Schnuck testified that Clark had been in the vicinity of the apartment the weekend of the murder and made statements which support a direct inference that he intended to rob Donnelly. The fact that Donnelly died, and the manner in which he did, irrefutably establish that he suffered serious physical harm. There was, moreover, the damning evidence of Clark's interrogation. According to Officer Rowland, Clark nonverbally admitted going into Donnelly's apartment and tying him up to obtain items to support his cocaine addiction.

The prosecutor's comment, on the other hand, was singular and made in reference to a particular and unique element of the separate aggravated murder counts. Weighing it against the overwhelming evidence of Clark's guilt on the aggravated robbery and aggravated burglary charges, we hold that the state has demonstrated beyond a reasonable doubt that the comment was harmless.

---

2. The vehemence with which the court in *Bordenkircher* condemned the prosecutor's remarks is noteworthy. The court stated that it was "apparent that the prosecutor calculated these remarks to create in the jurors' minds an inference of guilt based solely on [the defendant's] election to remain silent" and that the condemnation such remarks had received from the courts should "have been sufficient to bar such conduct from a courtroom forever." *Bordenkircher, supra,* at 202.

We cannot reach the same conclusion, however, with respect to the aggravated murder counts. Even if we assume the jury fully credited Rowland's testimony describing Clark's interrogation, there was no evidence adduced which would constitute an admission by Clark that he purposely killed Donnelly. Nor is there any other direct evidence that Clark intended to murder Donnelly as he perpetrated these acts. Rather, in order for the state to establish this crucial element of the murder charges, the state had to persuade the jury on the basis of the circumstances of the offense and the physical evidence. As we hold *infra*, the circumstantial evidence clearly was sufficient to permit the jury to make the inference that Clark purposely killed Donnelly.[3] However, we cannot say that this inference was logically inescapable or unsusceptible, beyond a reasonable doubt, to the influence of an adverse comment on the defendant's silence. It was exactly on the issue of Clark's intent, moreover, that the prosecutor resorted to commenting on Clark's refusal to testify. In this context, the prosecutor's words "George can't talk, Clark won't," could reasonably have resonated in the jurors' minds and influenced them to improperly place the onus on Clark for the lack of direct evidence as to how Donnelly died.

In sum, this is not a case where the state's evidence of Clark's intent to murder Donnelly is overwhelming. Rather, the state's case on this issue is based totally on circumstantial evidence and the state simply cannot demonstrate, beyond a reasonable doubt, that the prejudicial remark did not influence the jury's deliberations and tip the scale in favor of conviction.

We do not, moreover, find the error cured by the subsequent remarks of the second prosecutor who spoke in rebuttal and attempted to assure the jury that the state respected Clark's right not to testify. "Admonitions and instructions to be given to the jury are not the province of the prosecuting attorney. * * * A jury can hardly be influenced by an advocate's admonition regarding his own prejudicial remark." *Dooley v. Indiana* (1979), 271 Ind. 404, 406, 393 N.E.2d 154, 156. Nor do we find the error cured by the trial judge. No cautionary instruction was given promptly after the motion for a mistrial was denied. Although the trial judge later instructed the jury on Clark's right not

---

**3.** It bears emphasis here that the quantum of proof necessary to sustain a conviction on the basis of sufficient evidence is much less than that necessary to show "harmless error" in a case involving a constitutional infraction having a possible prejudicial impact on the jury. As discussed in Part IV, *infra,* sufficient evidence is only that evidence required to allow a reasonable person to conclude that all the elements of the offense are present. For the state to demonstrate that its constitutional error during trial is harmless, however, the state must demonstrate not only that the evidence was sufficient but, also, so overwhelming that there was no reasonable possibility that the jury's decision was influenced by the constitutional error.

to testify, we cannot say, beyond a reasonable doubt, that the instruction cured the error given the circumstantial nature of the evidence on the aggravated murder counts.

We conclude, therefore, that the prosecutor directly and adversely commented on Clark's refusal to testify, and that the state has not met its burden on appeal of demonstrating beyond a reasonable doubt that the comment did not influence the jury's finding of guilt on the charges of aggravated murder. Accordingly, we hold that the trial court's failure to grant a mistrial constitutes reversible error, but only on the two aggravated murder counts.

## IV

In his second assignment of error, Clark asserts that his convictions of two counts of aggravated murder with death penalty specifications were contrary to the manifest weight of the evidence. Specifically, Clark argues that the prosecution produced "no evidence" that an aggravated burglary or an aggravated robbery of George Donnelly occurred, and "no evidence" that the death of George Donnelly was purposely caused or committed with prior calculation and design. We disagree.[4]

It is well settled that "[o]n the trial of a case either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. A reviewing court will not reverse a judgment as against the manifest weight of the evidence unless, upon review of the record, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717. Moreover, the Ohio Supreme Court has held that "[a] reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus.

In our discussion of the first assignment, we outlined the state's evidence of aggravated robbery and aggravated burglary. To establish the former, the

---

4. Although, as cast, Clark's second assignment of error asserts only that the verdicts were against the manifest weight of the evidence, his argument that there was "no evidence" to support his convictions on the separate counts implicitly raises the issue of sufficiency of the evidence. Since the distinction between the two grounds is often blurred and sometimes expressly denied, see *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, we have chosen, in this case, to treat Clark's second assignment of error as challenging his convictions on both the weight and the sufficiency of the evidence.

evidence must have shown that Clark committed a theft and, in doing so, inflicted serious physical harm upon Donnelly. See R.C. 2911.01. The jury heard evidence that Clark admitted going into Donnelly's apartment and tying him up in order to steal items to support his cocaine habit. From this admission, evidence of the crime scene, and Clark's statements to Schnuck, the jury had a sufficient basis to conclude that Clark robbed Donnelly. The fact that Donnelly suffered serious physical harm is beyond dispute. We conclude, therefore, that the jury's finding of the aggravated robbery specification was based upon sufficient evidence and was not contrary to the weight of the evidence.

■ To establish aggravated burglary, the evidence must have shown that Clark trespassed by force, stealth or deception into Donnelly's apartment with purpose to commit a theft offense, and that one of the following applied: Donnelly's apartment was his permanent or temporary habitation in which he or someone else was likely to be present at the time of the crime, or Clark inflicted serious physical harm upon him. See R.C. 2911.11. For reasons we have discussed, we hold that there was sufficient evidence of Clark's intent to commit a theft and his infliction of serious physical harm upon Donnelly. It is also clear from the record that Donnelly's apartment was his habitation where he or another was likely to be present at the time of the crime.

We conclude, also, that there was sufficient evidence of a trespass by force. The Ohio Supreme Court has held that when a person who otherwise lawfully enters the victim's premises begins to assault the victim, a "powerful inference" arises that the privilege to remain is revoked and the perpetrator has become a trespasser by force for purposes of satisfying this element of burglary. See *State v. Steffen* (1987), 31 Ohio St.3d 111, 115, 31 OBR 273, 276, 509 N.E.2d 383, 389. We find this same "powerful inference" operative in the case *sub judice*, even assuming *arguendo* that Donnelly initially invited Clark into his apartment. We conclude, therefore, that the jury's finding on the aggravated burglary specification was based upon sufficient evidence and was not contrary to the manifest weight of the evidence.

■ Finally, we reject Clark's argument that there was "no evidence" that he purposely caused the death of George Donnelly. The physical evidence adduced at trial, which the jury was free to accept or reject, provided a sufficient basis for the jury to find that Clark strangled and then inflicted one or two powerful blows, possibly with his foot in a stamping action, to the chest of an abnormally frail ninety-one-year-old man. Having arrived at this conclusion, the jury could then properly have inferred that Clark intended to kill Donnelly based on the "fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Johnson* (1978), 56 Ohio St.2d 35, 39, 10 O.O.3d 78, 80, 381

N.E.2d 637, 640. Clark's argument that the fact that Donnelly was tied up precluded the jury from logically concluding that his murder was intentional is unpersuasive.[5]  While the evidence is circumstantial in nature, we hold it sufficient to support the jury's finding that Clark purposefully took Donnelly's life.[6]  Moreover, as we cannot say that the jury clearly lost its way or created a manifest miscarriage of justice, the jury's finding was not contrary to the weight of the evidence.[7]

Clark's second assignment of error is, therefore, overruled.

In sum, we affirm Clark's convictions on all but the two counts of aggravated murder.  His convictions on the two counts of aggravated murder are reversed and this cause remanded for a new trial on those two counts only.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

UTZ, P.J., KLUSMEIER and GORMAN, JJ., concur.

---

**5.**  A similar argument was advanced and rejected by the Ohio Supreme Court in *Johnson, supra,* at 39, 10 O.O.3d at 80, 381 N.E.2d at 640.

**6.**  See fn. 3, *supra.*

**7.**  Our holding that Clark's convictions for aggravated murder were not contrary to the manifest weight of the evidence does not impinge on our holding with respect to his first assignment of error given the separate standards of review.  Clark has not shown that the jury lost its way or created a manifest miscarriage of justice.  On the other hand, the state has not shown, beyond a reasonable doubt, that the prosecutor's comment did not influence the jury arriving at its ultimate conclusion of guilt on the murder charges.