OPINION
{¶ 1} On March 29, 2004, defendant-appellant, Dean A. Dillon ("appellant"), was indicted by a Franklin County Grand Jury for possession of cocaine in violation of R.C. 2925.11, a felony of the fifth degree. On the date of his scheduled trial, a hearing was conducted on appellant's motion to suppress evidence obtained as a result of his arrest. Appellant's motion to suppress was denied and a jury convicted appellant of the charge in the indictment. Appellant now appeals from the October 7, 2004 judgment of the Franklin County Court of Common Pleas entered upon that verdict. For the following reasons, we affirm.
 {¶ 2} The facts adduced at the suppression hearing consist of the following. Columbus Police Officer Jason Ayers ("Ayers") testified that on November 24, 2004, he was working with his partner, Officer Greg Seevers ("Seevers") in a marked police paddy wagon. That evening, Ayers communicated with Columbus Police Officer Chapman[1] ("Chapman") on the police radio, during which Chapman told Ayers he had lost track of an individual he had been observing in the area of Wilcox and High Street who Chapman believed was acting suspiciously. Ayers testified Chapman provided a general description of the man to him.
 {¶ 3} As the officers were patrolling the Short North and The Ohio State University campus area, they observed a man, later identified as appellant, walking westbound in the middle of Tompkins Street. According to Ayers, appellant failed to use the sidewalks available on both sides of the street. Ayers testified his attention was initially drawn to appellant because he was walking in the middle of the road, and that he did not know at the time appellant was the man Chapman had described as acting suspiciously. The officers concluded appellant had just committed the offense of walking in an adjacent roadway, in violation of Columbus City Code 2171.05.[2] As the officers approached appellant to issue a citation, he immediately ran in the opposite direction between the houses on Tompkins Street. The officers drove through an alley in pursuit of appellant, and witnessed him fall while attempting to run up an embankment. Thereafter, Ayers and Seevers were able to detain him.
 {¶ 4} According to Ayers, appellant informed the officers he had no identification on his person. Ayers testified regarding his attempt to identify appellant:
* * * I began a verbal identification process asking him his name and date of birth. He gave me the name Gearheart with a date of birth of — I think it was 1972. Every time we ask somebody their name and date of birth, immediately after the date of birth, I ask the suspect how old they are. He said he was 25. There is a five-year discrepancy there between the date of birth that he gave and the age that he gave. Asked him again. He changed the spelling of the last name. It was G-a-r-h-e-a-r-t, I believe. He changed it to G-e-a-r-h-e-a-r-t and gave a date of birth with the year ending in '72, I believe, which is still inconsistent. He said he was 29. The second date of birth would have actually made him 31. I again explained the inconsistencies to Mr. Dillon. He changed the date of birth again to 1971, which again would have made him 32 and not 25 like he had initially stated.
(Tr. at 4-5.)
Because the officers were unable to verify appellant's identification in order to issue him a traffic citation, he was arrested. Subsequent to his arrest, a search of appellant's person revealed narcotics and drug paraphernalia in his jacket pocket.
 {¶ 5} On cross-examination, Ayers was questioned regarding the U-10 form he completed on the evening of the incident. Ayers testified he wrote in the U-10 that "[they] observed a male matching the description that Officer Chapman had relayed walking eastbound on Tompkins Avenue west of High Street without walking in the middle of the street even though sidewalks were available." Id. at 13.
 {¶ 6} Appellant testified at the suppression hearing on his own behalf. He testified a gentleman, unbeknownst to him as Chapman, was following him in a brown van and "staring at [him] in a real peculiar way." Id. at 15. Because the man continued to follow him, appellant confronted him because he thought he was a homosexual. Thereafter, appellant walked away from the man, and cut through an alleyway. As he entered the alleyway, appellant heard the roar of engines, and "when the lights came on, there were five or six police officers with their guns drawn on [him]." Id. at 16. Defendant testified the officers ordered him to lie down. When the officers approached him, "they" put their knee in his back and asked if he had any drugs or weapons. The officers performed a pat down search for weapons, didn't find any, and then "manipulat[ed] his pockets and pull[ed] everything out of his pockets." Id. at 17. Appellant testified he "assumed that they found a baggy or whatever that had drugs in it" in the jacket he was wearing. Id. at 17. Thereafter, the officers arrested him.
 {¶ 7} Appellant testified he was never asked for identification prior to his arrest. After he was placed in the paddy wagon, appellant testified an officer accosted him with derogatory remarks, and threatened him for "[making] him mess up his uniform." Id. at 18. At that point, Ayers approached him, and appellant identified himself as James H. Gearheart.
 {¶ 8} After the hearing, the court denied appellant's motion to suppress. That same day, appellant's case proceeded to trial. At trial, Ayers and Seevers both testified regarding the events that led to appellant's arrest. Ayers' testimony was similar to the testimony he offered at trial, with one exception. During the suppression hearing, Ayers testified appellant informed him he was born in 1972, but testified at trial that appellant indicated he was born in 1979.
 {¶ 9} After the State rested its case, the defense moved for a Crim.R. 29 acquittal, which was denied by the trial court. The defense presented no witnesses and rested. At the conclusion of trial, the jury found appellant guilty of possession of crack cocaine. On October 7, 2004, the court imposed a 12-month prison sentence, and recognized 182 days of jail time credit.
 {¶ 10} On appeal, appellant asserts the following assignments of error:
Assignment of Error I
Appellant was denied effective assistance of counsel.
Assignment of Error II
There was insufficient evidence to support Appellant's conviction and the conviction was against the manifest weight of the evidence.
Assignment of Error III
Appellant's due process rights under the state and federal constitutions were violated by prosecutorial misconduct when the state's attorney commented on Appellant's failure to present evidence and/or testify at trial, thereby shifting the burden of proof to Appellant and violating Appellant's Fifth Amendment Rights.
Assignment of Error IV
It was plain error for the trial court to fail to sustain Appellant's motion to suppress the evidence, when it was clear that the alleged probable cause used to justify detaining Appellant was the result of illegal activity on the part of the police.
 {¶ 11} For ease of discussion, we will address appellant's assignments of error out of order. In his second assignment of error, appellant argues that his conviction for possession of crack cocaine was not supported by sufficient evidence and that it was against the manifest weight of the evidence.
 {¶ 12} The Supreme Court of Ohio outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 13} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, supra, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80,434 N.E.2d 1356. Thus, a jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh
(2001), 90 Ohio St.3d 460, 484, 739 N.E.2d 749; State v. Jenks
(1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 14} A manifest weight argument is analyzed under a different standard. A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented.Thompkins, supra. The court of appeals, sits as a "thirteenth juror" and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717; see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548,664 N.E.2d 622. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 15} "While the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.]DeHass, [(1967), 10 Ohio St.2d 230, 39 O.O.2d 366,227 N.E.2d 212], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."State v. Nivens (May 28, 1996), Franklin App. No. 95 APA09-1236, 1996 Ohio App. LEXIS 2245 at *7. Furthermore, it is within the province of the jury to make the credibility of witnesses. State v. Lakes (1964), 120 Ohio App. 213, 217,201 N.E.2d 809 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness"); State v. Harris
(1991), 73 Ohio App.3d 57, 63, 596 N.E.2d 563 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against the manifest weight). Determinations of credibility and weight of the testimony remain within the province of the trier of fact.DeHass, paragraph one of the syllabus.
 {¶ 16} In support of his argument that the evidence was insufficient to convict him, appellant contends the evidence does not establish that appellant knowingly possessed crack cocaine in the jacket he was wearing.
 {¶ 17} In this case, appellant was convicted of violating R.C. 2925.11, which provides that no person shall knowingly obtain, possess, or use a controlled substance. R.C. 2925.01(K) defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.22(B) provides, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 18} Here, Ayers and Seevers both testified at trial that they attempted to stop appellant to issue a citation for walking in the middle of Tompkins Street. As the officers approached him, appellant immediately ran in the opposite direction. After the officers detained him in an alleyway, both officers testified appellant provided at least two different versions of his name, age and a date of birth that did not correlate with the age. Because the officers could not ascertain his identity, appellant was arrested. In a search subsequent to his arrest, the officers discovered crack cocaine in the pocket of the jacket appellant was wearing.
 {¶ 19} Viewing the evidence in a light most favorable to the prosecution, the evidence adduced at trial provided a sufficient basis upon which the jury could reasonably conclude that appellant knowingly possessed crack cocaine. The record reveals appellant ran from the officers when they approached him to issue a citation, and concealed his identity after he was detained. Furthermore, no evidence was presented at trial that appellant ever denied the jacket he was wearing belonged to him. Thus, we find appellant's conviction supported by sufficient evidence.
 {¶ 20} In support of his manifest weight argument, appellant contends that the officer's testimony that drugs were taken out of the jacket appellant was wearing does not automatically lead to the conclusion that he knowingly possessed a controlled substance. Appellant's argument is directed toward the credibility of the officers. But defense counsel cross-examined the officers and brought any inconsistencies within their testimony to the jury's attention. "The jury was free to believe all, part, or none of the testimony of each witness." State v.Colvin, Franklin App. No. 04AP-421, 2005-Ohio-1448 at ¶ 34. Any weight to be given to alleged inconsistencies in the witnesses' testimony were determinations within the province of the jury, and such inconsistencies do not render a conviction against the manifest weight of the evidence. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing Nivens, supra.
 {¶ 21} Moreover, an appellate court may not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is manifestly clear that the fact finder lost its way. State v. Green, Franklin App. No. 03AP-813, 2004-Ohio-3697, at ¶ 25. See, also, State v. Covington,
Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28. Based on the record before us, we find there was sufficient competent, credible evidence to support appellant's convictions beyond a reasonable doubt. We also find the jury's verdicts were supported by the manifest weight of the evidence.
 {¶ 22} Accordingly, appellant's second assignment of error is overruled.
 {¶ 23} In his fourth assignment of error, appellant argues the court erred in denying his motion to suppress evidence. In particular, appellant contends the officers caused him to commit a jaywalking violation, and impermissibly used that violation as probable cause to detain and arrest him.
 {¶ 24} "Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact." State v. Featherstone, 150 Ohio App. 3d 24,2002-Ohio-6028 at ¶ 10, 778 N.E.2d 1124. As the trier of fact, the trial court must weigh the evidence and determine the credibility of witnesses. On appeal, we must accept the trial court's findings of fact if they are supported by competent credible evidence. State v. Brooks, (1996), 75 Ohio St.3d 148,154, 661 N.E.2d 1030. We independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts met the appropriate legal standard. Ornelas v. UnitedStates (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.
 {¶ 25} In this case, the officers testified they attempted to stop appellant because he committed a jaywalking offense. A law enforcement officer may stop an individual when he has reasonable suspicion that criminal activity is afoot. Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed2d 889; State v.Lloyd (1998), 126 Ohio App. 3d 95, 102, 709 N.E.2d 913. Reasonable suspicion is present when an officer is able to identify specific facts that, when taken together with rational inferences from those facts, would warrant a person of reasonable caution in the belief that an individual being stopped is committing a crime. Florida v. J.L. (2000), 529 U.S. 266,120 S.Ct. 1375, 146 L.Ed.2d 254; Terry, at 21-22.
 {¶ 26} In this case, we must first independently determine whether the facts meet the appropriate legal standard regarding the existence of reasonable suspicion, without deference to the trial court's conclusion. State v. Curry (1994),95 Ohio App.3d 93, 96, 641 N.E.2d 1172; State v. Claytor (1993),85 Ohio App.3d 623, 627, 620 N.E.2d 906; State v. Guysinger (1993),86 Ohio App.3d 592, 594, 621 N.E.2d 726. Generally, "determinations of reasonable suspicion and probable cause should be reviewed denovo on appeal" in cases involving warrantless stops, searches and arrests. Ornelas, supra.
 {¶ 27} Columbus City Code Section 2171.05 provides "(a) Where a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway." In the instant matter, the officers testified they observed appellant walking in the middle of Tompkins Street when sidewalks were readily available on both sides of the street. Because this violation transpired in the officers' presence, they attempted to detain appellant for the purpose of issuing a jaywalking citation. As the officers approached him, appellant ran in the opposite direction.
 {¶ 28} Appellant testified that he "cut through an alleyway" instead of walking towards Chapman, who was stopped in his van at a stop sign on Tompkins Street. Appellant did not address where he walked on Tompkins Street to reach the alleyway, and therefore did not refute the officers' allegations that he was jaywalking on the date of the incident. Based on the evidence presented, we find the officers had reasonable suspicion to stop appellant for jaywalking.
 {¶ 29} We next consider whether the officers violated the Fourth Amendment when they asked appellant for identification during the stop. Once a police officer obtains reasonable suspicion a person may be involved in criminal activity, the officer may stop the person for a brief time and take additional steps to further investigate. Hibel v. Sixth Judicial Dist. Ct.of NV (2004), 542 U.S. 177, 124 S.C. 2451, 159 L.Ed.2d 292
citing Terry, supra. The officer's action must be justified at its inception, and "`reasonably related in scope'" to the circumstances that initially justified the interference. Id. In the ordinary course of an investigation, a police officer is free to ask a person for identification without implicating the Fourth Amendment. Hibel.
 {¶ 30} In this case, the officers testified appellant ran from them as they attempted to issue him a citation for jaywalking. After he was detained, appellant provided at least two versions of his last name and conflicting dates of birth. R.C. 2935.26 provides "when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless * * * the offender cannot or will not offer satisfactory evidence of his identity." Moreover, the Ohio Supreme Court has held that the making of an unsworn, false, oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime is punishable conduct within the meaning of R.C. 2921.13(A)(3) (falsification) and 2921.31(A) (obstructing official business). State v.Lazzaro (1996), 76 Ohio St.3d 261, 667 N.E.2d 384, syllabus. We conclude the officers' inquiry of appellant's identity was justified and reasonable, and appellant's responses provided justification for his arrest. Thus, the officers did not violate the Fourth Amendment rights when they asked him for identification, and when they lawfully arrested him.
 {¶ 31} We now turn to the final issue raised by the fourth assignment of error, which is whether Ayers and Seevers were justified in performing the search incident to arrest. A law enforcement officer may conduct a search incident to a lawful arrest under a well-established exception to the Fourth Amendment warrant requirement. Chimel v. California (1969), 395 U.S. 752,762-763, 89 S.Ct. 2034, 23 L.Ed.2d 685; United States v.Robinson (1973), 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427
(finding a search incident to arrest is a "reasonable" exception to the warrant requirement under the Fourth Amendment). In conducting a search incident to a lawful arrest, the police may conduct a full search of the arrestee's person. That search is not limited to the discovery of weapons, but may include evidence of a crime as well. State v. Jones (1996), 112 Ohio App.3d 206,215, 678 N.E.2d 285, citing Robinson and Gustafson v. Florida
(1973), 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456; Groves. In this case, because the officers executed a valid Terry stop of appellant, and lawfully arrested the search incident to an arrest was proper. Thus, Ayers and Seevers did not violate appellant's Fourth Amendment rights by searching appellant following the arrest.
 {¶ 32} For all of the foregoing reasons, we conclude that the trial court did not err by denying appellant's motion to suppress. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 33} In his first assignment of error, appellant claims he received ineffective assistance of counsel. In order to succeed on his claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Initially, appellant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Id. Appellant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690.
 {¶ 34} In analyzing the first prong of Strickland, there is a strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing Michel v. Louisiana (1955),350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83. However, an error by counsel, even if unreasonable under prevailing professional standards, does not warrant setting aside a judgment unless the error affected the outcome of the trial. Strickland at 691.
 {¶ 35} Thus, under the second prong of Strickland,
appellant must show that counsel's deficient performance prejudiced the defense. Id. This factor requires showing that but for counsel's unprofessional errors, a reasonable probability existed that the result of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 36} In support of his argument that he received ineffective assistance of counsel, appellant first contends his counsel was deficient for not objecting to the State's "failure to call" Chapman as a witness at the suppression hearing, and failure to renew his motion to suppress at trial. In support, appellant argues his rights under the Confrontation Clause were violated because Chapman did not testify at trial or at the suppression hearing.[3] Appellant relies on the United States Supreme Court case of Crawford v. Washington (2004),541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, in which the court held that out-of-court testimonial hearsay statements by a witness who did not testify at trial were inadmissible against the defendant unless the witness was unavailable to testify at trial and the defendant previously had an opportunity to cross-examine the witness. Id. at 1365.
 {¶ 37} The State argues contra that Ayers and Seevers both testified they were patrolling the area and witnessed appellant committing the offense of jaywalking. The officers testified they approached appellant with the intention of issuing a citation, separate and apart from Chapman's direction or suspicion. Thus, the State asserts it was unnecessary for Chapman to testify, because the officers possessed an independent basis to arrest appellant.
 {¶ 38} "Trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." State v. Kasser (Nov. 29, 2001), Franklin App. No. 01AP-260; State v. Monroe (Sept. 25, 2001), Franklin App. No. 01AP-275; State v. Gray (Mar. 28, 2000), Franklin App. No. 99AP-666. In this case, the State did not attempt to offer any "testimonial hearsay statements" on behalf of Chapman. Instead, the officers possessed an independent reason to stop appellant because they witnessed him commit the offense of jaywalking. Therefore, we find the Confrontation Clause was not violated because Chapman did not testify, and appellant's reliance on Crawford is misplaced.
 {¶ 39} We now turn to appellant's argument that his arrest was invalid because the officers were acting at the direction of Chapman, and therefore had no probable cause to arrest him. The United States Supreme Court has held the subjective intentions of law enforcement officers play no role in probable cause analysis.Whren v. United States (1996), 517 U.S. 806, 812,116 S.Ct. 1769, 135 L.Ed.2d 89. See, also, Arkansas v. Sullivan (2001),532 U.S. 769, 771, 121 S.Ct. 1876, 149 L.Ed.2d 994 (court was unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers). In this case, we have previously determined that the officers were justified in arresting appellant for reasons independent from their communication with Chapman. Therefore, appellant's theory that an officer's ulterior motive of investigating unrelated criminal activity invalidates an arrest otherwise based on probable cause is without merit. See Featherstone, supra at ¶ 14; State v.Lattimore, Franklin App. No. 03AP-467, 2003-Ohio-6829 at ¶ 10.
 {¶ 40} In light of the foregoing evidence, appellant has failed to demonstrate his counsel was deficient by failing to object to Chapman not being called as a witness. Strickland,
supra.
 {¶ 41} Appellant further contends his counsel was deficient for failing to renew her motion to suppress when it became "clear" Ayres lied about why the search was conducted. In support, appellant emphasizes that Ayers testified during the suppression hearing that appellant informed him he was born in 1972, but testified at trial that appellant indicated he was born in 1979. Appellant argues this discrepancy demonstrates the officers lied about their motivations for stopping appellant, and that they had no probable cause to arrest him.
 {¶ 42} The State argues, contra, Ayers' testimony regarding what exact year appellant provided for his date of birth is irrelevant. Instead, the State emphasizes the point of Ayers' testimony was that appellant gave an age that did not correlate with the year he said he was born. Further, the State asserts that Ayers qualified his responses regarding the date of birth given by appellant. We agree. At the suppression hearing, Ayers qualified his answers regarding the year appellant provided for a date of birth, by stating, "I think it was 1972" and "He * * * gave a date of birth with the year ending in '72, I believe,
which is still inconsistent." (Tr. at 5.) (Emphasis added.) Regardless of his recollection of the date of birth provided by appellant, Ayers' testimony illustrates the point that appellant gave a false date of birth. This evidence does not, however, establish counsel was deficient for failing to renew the motion to suppress. Thus, appellant's argument is without merit.
 {¶ 43} Appellant's final argument under his first assignment of error, and his third assignment of error, are interrelated and will be addressed together. Therein, he argues the State committed prosecutorial misconduct by making an improper statement during closing argument, and that his trial counsel was ineffective for failing to object to this comment. In support of his claim, appellant cites the State's comment during its rebuttal closing argument that "there was absolutely no testimony that he had the wrong jacket on." (Tr. at 50.) Appellant contends this comment was impermissibly directed toward appellant's failure to testify. Further, appellant argues the State's remarks violated his right to remain silent, and improperly shifted the burden of proof to him to establish his innocence.
 {¶ 44} Appellant cites State v. Smith (1998),130 Ohio App.3d 360, 720 N.E.2d 149, for the proposition that the State's comments may have "created the belief in the minds of the jury that the defense had the burden of proof on the matter of [ownership of the jacket], particularly with no curative instructive from the trial judge." (Appellant's Brief at 5.) InSmith, the prosecutor commented on the defendant's lack of an alibi during closing arguments. Defense counsel objected to this comment, which was sustained by the trial court. Defense counsel moved for a mistrial, arguing the prosecutor had improperly commented on the defendant's failure to testify and had improperly shifted the burden of proof to him to establish his innocence. The trial court denied defense counsel's motion for a mistrial and did not give the jury a curative instruction.
 {¶ 45} The Hamilton County Court of Appeals held in Smith
that the prosecutor's comment during closing argument regarding the defendant's lack of an alibi was adversely directed to defendant's decision not to testify. The court reasoned "[i]t is natural to conclude that the intention of such language is to underscore [the defendant's] failure to testify and his silence as to an alibi. A reasonable juror could conclude that if [the defendant] had an alibi he would not remain silent." Id. at 367. The court also held the comment could have caused the jury to believe the defendant had the burden of proving he had an alibi, especially because the jury received no curative instruction from the judge.
 {¶ 46} Appellant also relies on State v. Butler, Franklin App. No. 01AP-590, 2002-Ohio-1437, 2002 Ohio App. LEXIS 1423. InButler, this court determined that the prosecutor's statements made during closing arguments, were improper and prejudicial, and warranted reversal of the convictions:
Basically, if I had to sum up this case in just a few words, I can tell you that the defendant cannot explain the unexplainable. He cannot account for it. He cannot dismiss it. He can't even address it. * * * The defendant cannot account for having this ring. This defendant cannot account for selling this ring. This defendant cannot account for interfering with these witnesses. This defendant cannot account for his multiple versions of where he was that night. He cannot account for the fact that he repeatedly said that he hated an innocent person who had never meant him any harm.
Butler, 2002 Ohio App. LEXIS 1423 at *12.
 {¶ 47} In finding the foregoing to be prejudicial, this court determined that the case was analogous to State v. Clark
(1991), 74 Ohio App.3d 151, 598 N.E.2d 740. In Clark, the prosecutor stated the following during closing argument: "George [the decedent] can't talk, Clark [the defendant] won't." Id. at 156, quoting the trial transcript. The court in Clark concluded that the prosecutor's comment on the defendant's refusal to testify was both improper and prejudicial.
 {¶ 48} The State argues the prosecutor's comments were not improper remarks on appellant's failure to testify, and were merely responses to the defense's closing argument that there was no evidence the jacket belonged to him. The State relies onState v. Williams (1986), 23 Ohio St.3d 16, 23 OBR 13,490 N.E.2d 906, in which the Supreme Court has held that references by the prosecutor in closing argument to "uncontradicted evidence is not a comment on the accused's failure to testify where the comment is directed to the strength of the State's evidence and not to the silence of the accused, and where the jury is instructed, as here, to not consider the accused's failure to testify." Id. at 20, citing State v. Ferguson (1983),5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265. Alternatively, the State argues that under a plain error analysis, appellant failed to demonstrate that but for the prosecutor's comments during closing arguments, he would not have been convicted.
 {¶ 49} Because appellant did not object to the prosecutor's remarks during his closing argument, his argument is waived except for plain error that would have affected the outcome of appellant's trial. Generally, a court will not consider alleged errors that were not brought to the attention of the trial court. However, Crim.R. 52(B) provides that a court may consider errors affecting substantial rights even though they were not brought to the attention of the trial court. "`Plain error is an obvious error * * * that affects a substantial right.'" State v.Yarbrough, 95 Ohio St.2d 227, 244, 2002-Ohio-2126 at 108,767 N.E.2d 216, quoting State v. Keith (1997), 79 Ohio St.3d 514,518, 684 N.E.2d 47. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. Yarbrough at 244-245. "Notice of plain error is taken with the utmost caution only under exceptional circumstances and only where necessary to prevent a miscarriage of justice." State v. Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 28.
 {¶ 50} In general, prosecutors are given considerable latitude in closing argument. State v. Ballew (1996),76 Ohio St.3d 244, 255, 667 N.E.2d 369. In closing argument, a prosecutor may comment on "`what the evidence has shown and what reasonable inferences may be drawn therefrom.'" State v. Lott (1990),51 Ohio St.3d 160, 165, 555 N.E.2d 293, quoting State v. Stephens
(1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773. A prosecutor may not express his personal belief or opinion as to the credibility of a witness, the guilt of an accused, or allude to matters that are not supported by admissible evidence. State v. Smith
(1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 470 N.E.2d 883.
 {¶ 51} Prior to trial in this case, the trial court instructed the jury, "the statements that the attorneys make are not evidence. They are the attorneys' opinions of what they think the evidence will show." (Tr. at 25.) Further, the trial court properly instructed the jury what consideration they may give to the fact that appellant did not testify at trial:
There are many reasons why an individual defendant might not testify in a particular case and you shouldn't be concerned with that. You are to draw no inference whatsoever with respect to [appellant's] right to remain silent. By not testifying in this case, he's only using the rights that are guaranteed to him under the constitutions of the State of Ohio and the United States.
(Tr. at 56-57.)
 {¶ 52} Viewing the State's comment in light of the evidence presented at trial, we find that the State did not overstep the bounds of proper conduct. The prosecutor's comment and his purpose behind this statement were unlike the situations inSmith and Butler. We agree with the State that its remark during its rebuttal closing argument was not directed towards appellant's constitutional right not to testify, and instead was a remark on the state of the evidence in response to defense counsel's argument that the jacket did not belong to him. Based on the evidence presented, and the court's instructions to the jury, the State's remark during its rebuttal closing argument did not deprive appellant of his right to a fair trial, and was not directed toward appellant's failure to testify.
 {¶ 53} Appellant also argues his counsel was deficient for failing to object during the prosecutor's rebuttal closing argument. Because we have found that the State's comment did not exceed the bounds of proper conduct, failure to object to it does not constitute ineffective assistance of trial counsel. SeeState v. Scott (June 24, 1997), Franklin App. No. 96AP-492.
 {¶ 54} Accordingly, appellant's first and third assignments of error are overruled. {¶ 55} For the foregoing reasons, appellant's first, second, third and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Petree and Deshler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Chapman did not testify at the suppression hearing or at trial.
[2] Columbus City Code Section 2171.05 provides "(a) Where a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.
[3] The Confrontation Clause guarantees that, "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."