[Cite as *State v. Harris*, 2011-Ohio-3190.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.       25443 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| HENRY R. HARRIS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.       CR 09 09 2691 |

DECISION AND JOURNAL ENTRY

Dated: June 29, 2011

BELFANCE, Presiding Judge.

{¶1}    Defendant-Appellant Henry R. Harris appeals from the judgments of the Summit County Court of Common Pleas.  For the reasons set forth below, we affirm in part, and reverse in part.

I.

{¶2}    Mr. Harris was a passenger in a van parked outside the XTC bar in Tallmadge on the evening of August 15, 2009.  At the time, Officer Bernard Cirullo was patrolling the parking lot and noticed the van parked in a dark area of the parking lot.  Officer Cirullo had made numerous arrests in the area in the past.  Officer Cirullo approached the van in his vehicle and saw Mr. Harris look in Officer Cirullo's direction.  Mr. Harris got out and walked toward the bar.  The van immediately began to back up.  Officer Cirullo turned on his overhead lights causing the van to stop.  He exited the cruiser and told Mr. Harris to have a seat in the van.  Mr. Harris complied.  Officer Cirullo proceeded to ask the individuals why they were waiting in the van.

Mr. Harris said he was waiting for his "dude," but did not provide the name of the "dude[.]" Officer Cirullo then collected identification from those in the van. While Officer Cirullo was in his cruiser, he noticed Mr. Harris leaning and reaching down toward his legs. Officer Cirullo became concerned that Mr. Harris had a weapon. He waited for Officer Stephanie Jerin to arrive and then conducted a pat down of Mr. Harris. The pat down did not reveal any weapons or other contraband on Mr. Harris' person. As Officer Cirullo was performing the pat down, Officer Jerin noticed a clear baggy containing white rocks, later determined to be cocaine, on the ground right near the passenger door. Thereafter, Mr. Harris was arrested. Mr. Harris was placed in the passenger back seat of the police cruiser. Upon removing Mr. Harris form the police cruiser, Officer Cirullo found a  pipe containing Chore Boy in between the seat cushions in the area where Mr. Harris was sitting. The pipe was tested and discovered to contain cocaine residue.

{¶3}    Following the denial of Mr. Harris' motion to suppress, Mr. Harris elected to have his case tried to the court.   The trial court found him guilty of one count of possession of cocaine, a felony of the fifth degree, in violation of R.C. 2925.11(A)(C)(4) and one count of possession of drug paraphernalia, a misdemeanor of the fourth degree. Mr. Harris received a suspended sentence and was placed on community control. Mr. Harris has appealed, raising three assignments of error for our review.

II.

"THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANT'S MOTION TO SUPPRESS."

{¶4}    In Mr. Harris' first assignment of error he contends that the trial court erred in denying his motion to suppress as the police lacked a reasonable suspicion of criminal activity justifying an investigatory stop. We agree.

{¶5} Ordinarily, review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8. Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence and review the trial court's application of the law to the facts de novo. *State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶6. In the proceedings below, while the trial court did orally discuss the matter and deny the motion following the testimony presented at the suppression hearing, the trial court made no factual findings in its order denying Mr. Harris' motion to suppress. "Accordingly, this Court relies on the testimony transcribed from the hearing and the undisputed facts that are supported by the record in determining whether the trial court reached the proper result." *State v. Cherry*, 9th Dist. No. 20771, 2002-Ohio-3738, at ¶54.

{¶6} "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio* (1968), 392 U.S. 1, 22. "If the stop is supported by an officer's reasonable suspicion of criminal activity, it does not violate the Fourth Amendment. Reasonable suspicion requires that the officer point to specific, articulable facts which, together with rational inferences from those facts, reasonably warrant the intrusion." (Internal citations and quotations omitted.) *State v. Morton,* 9th Dist. No. 25117, 2010-Ohio-3582, at ¶8. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo* (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *State v. Andrews* (1991), 57 Ohio St.3d 86, 88.

{¶7}    The only testimony at the suppression hearing was that of Officer Cirullo.  He testified that the stop took place at approximately 8:30 p.m. on August 15, 2009.  There was no testimony concerning whether it was still daylight outside at the time.  Officer Cirullo was patrolling the parking lot of the bar when he noticed a van parked in a darker area of the parking lot.  Officer Cirullo testified that he had made two to three hundred arrests in that area in his eight years as a police officer for the City of Tallmadge.  Officer Cirullo testified that there was initially nothing suspicious about the van.  As he drove closer, he saw Mr. Harris "look over to my direction[.]"  He further testified that:

> "almost immediately, the passenger door opens, [Mr. Harris] steps out and starts walking toward the bar.  As quickly as the door opened I see the van's reverse lights come on almost at the same time.  A second – almost at the same time that door actually closed the van starts backing up; so, it all happened very quickly."

At that point Officer Cirullo turned on his overhead lights, the van stopped, and Officer Cirullo told Mr. Harris to "have a seat back in the van[.]"  The State does not contest that an investigatory stop was initiated at this point.

{¶8}    Based on the facts before the trial court, we conclude that the police lacked the reasonable suspicion of criminal activity necessary to conduct an investigatory stop, see *Morton* at ¶8, and, thus, conclude that the stop was unlawful.  While the stop took place in a dark portion of a high-crime area, we fail to see how Mr. Harris' conduct *prior to the stop* can be viewed as indicative of criminal activity.  There was no testimony elicited that prior to the investigatory stop Mr. Harris was making any furtive gestures which would constitute a fact to be taken into account in a totality of the circumstances analysis.  See *Bobo*, 37 Ohio St.3d at 179-180.  The testimony indicates that after looking in Officer Cirullo's direction, Mr. Harris got out of the van and walked toward the bar.  Mr. Harris' actions coupled with the fact that Mr. Harris was in a high-crime area in which Officer Cirullo had made numerous arrests does not amount to

reasonable suspicion of criminal activity. See *State v. Sumlin*, 2nd Dist. No. 23144, 2009-Ohio-2185, at ¶50 (concluding that "the action of simply backing away, slowly, over a short distance, from two police officers exiting a police cruiser, in a high crime neighborhood, with ones hands behind ones back, is not sufficient to give rise to a reasonable, articulable suspicion that criminal activity is afoot, as required for a stop[.]"); *State v. Fanning* (1990), 70 Ohio App.3d 648, 650 ("At the moment that the police decided to approach and stop him, the defendant had exhibited nothing but innocuous behavior. The mere fact that the defendant walked briskly away as the police approached, absent the observation of any other suspicious behavior, would not justify an investigative stop."). There was no testimony that Officer Cirullo even believed that Mr. Harris' behavior was suspicious, nor did Officer Cirullo testify that he suspected that Mr. Harris was engaged in criminal activity. Mr. Harris was a passenger in a van parked in the parking lot of a bar. He exited the van and walked toward the bar. His behavior is completely consistent with what one would expect of any patron. In light of the foregoing, we conclude the trial court erred in denying Mr. Harris' motion to suppress. Mr. Harris' first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

> "APPELLANT'S CONVICTIONS WERE BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW."

{¶9} Mr. Harris contends in his second assignment of error that that there was insufficient evidence to establish that Mr. Harris possessed the cocaine and drug paraphernalia. We disagree.

{¶10} We begin by noting that despite our resolution of Mr. Harris' first assignment of error this assignment of error is not moot in light of double jeopardy considerations. See *State v. Vanni*, 182 Ohio App.3d 505, 2009-Ohio-2295, at ¶¶14-15. Accordingly, if we conclude that the State failed to present sufficient evidence at trial, then the State will be precluded from any

attempt to retry Mr. Harris. Id. at ¶14. If, on the other hand, we conclude the State presented sufficient evidence, the State has the option to retry Mr. Harris without the evidence that should have been suppressed. See id.

{¶11} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. No. 24731, 2009-Ohio-6955, at ¶18, citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility and we make all reasonable inferences in favor of the State. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273. The State's evidence is sufficient if it allows the jury to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. Id.

{¶12} Mr. Harris was convicted of violating R.C. 2925.11(A)/(C)(4) and R.C. 2925.14(C)(1). R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(C)(4) provides that "[i]f the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine." R.C. 2925.14(C)(1) provides that "[n]o person shall knowingly use, or possess with purpose to use, drug paraphernalia."

{¶13} There is no dispute that the pipe with cocaine residue constituted drug paraphernalia. See R.C. 2925.14(A)(13). Nor is there a dispute that the white rocks found in the clear baggy contained cocaine. Instead Mr. Harris asserts there was insufficient evidence to establish that he possessed the cocaine or the drug paraphernalia. "'Possess' or 'possession'

means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

> "Possession can be actual or constructive. Actual possession requires ownership or physical control. However, constructive possession exists when a person knowingly exercises dominion or control over an item, even without physically possessing it. While mere presence in the vicinity of the item is insufficient to justify possession, ready availability of the item and close proximity to it support a finding of constructive possession. Constructive possession may be inferred from the drugs' presence in a usable form and in close proximity to the defendant." (Internal citations and quotations omitted.) *State v. Forney*, 9th Dist. No. 24361, 2009-Ohio-2999, at ¶16.

{¶14} We conclude there was sufficient evidence that Mr. Harris possessed the cocaine and the drug paraphernalia. Prior to discovering the baggy containing cocaine, Officer Cirullo testified that he observed Mr. Harris, who was seated in the van, reaching towards his feet. Officer Cirullo was concerned that Mr. Harris might have a weapon. During this time, Officer Jerin arrived. Officer Cirullo then approached the van and had Mr. Harris step outside of it so that Officer Cirullo could conduct a pat down. Officer Cirullo testified that he did not see anything on the ground near the van prior to conducting the pat down. Officer Jerin likewise testified that prior to the pat down she did not see anything on the ground near the passenger side of the van. While Officer Cirullo was moving Mr. Harris to the rear of the vehicle to conduct the pat down, Officer Jerin noticed a clear baggy containing what was determined to be cocaine on the ground near where Mr. Harris was standing.

{¶15} Viewing these facts in a light most favorable to the State, one could reasonably conclude that Mr. Harris possessed the cocaine. Given that there was testimony that there was no cocaine on the ground prior to Mr. Harris exiting the van and that there was cocaine on the ground after he exited the van, it would be reasonable to conclude that Mr. Harris did have

physical control over the cocaine and that he either dropped it on the ground or that it fell out of his clothing upon exiting the van. See id. Accordingly, considering the facts in a light most favorable to the State, we conclude there was sufficient evidence to sustain Mr. Harris' conviction for possession of cocaine.

{¶16} With respect to Mr. Harris' conviction for drug paraphernalia, we likewise conclude sufficient evidence was presented to sustain his conviction. Officer Cirullo testified that prior to his shift he always checks the back seat of his cruiser for any items that might have been left back there. Officer Cirullo testified that prior to placing Mr. Harris in the back passenger seat of the police cruiser he checked the back seat of the cruiser and found no contraband or other items there. Officer Cirullo testified that Mr. Harris was handcuffed and placed on the passenger's side and the driver was handcuffed and placed on the driver's side of the police cruiser. After the van was searched, Officer Cirullo had both men exit the police cruiser and again searched the police cruiser. Officer Cirullo found a crack pipe containing Chore Boy between the cushions in the area where Mr. Harris had been seated. The pipe was tested and contained cocaine residue.

{¶17} Viewing these facts in a light most favorable to the State, one could reasonably conclude that Mr. Harris possessed drug paraphernalia. Given that there was testimony that there was no crack pipe in the police cruiser prior to Mr. Harris being placed in it and there was testimony that a crack pipe was found between the seat cushions in the area where Mr. Harris was seated after he was removed from the cruiser, it would be reasonable to conclude that Mr. Harris did have physical control over the crack pipe. See id. Accordingly, we conclude there was sufficient evidence to sustain Mr. Harris' conviction for possession of drug paraphernalia. In light of the foregoing, we overrule Mr. Harris' second assignment of error.

ASSIGNMENT OF ERROR III

"APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶18} Our resolution of Mr. Harris' first assignment of error renders his third assignment of error moot. Accordingly, we decline to address it. See App.R. 12(A)(1)(c).

III.

{¶19} In light of the foregoing, we sustain Mr. Harris' first assignment of error, overrule his second assignment of error, and decline to address his third assignment of error.

Judgment affirmed in part,
reversed in part,
and cause remanded,

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to both parties equally.

EVE V. BELFANCE
FOR THE COURT

MOORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

NICHOLAS SWYRYDENKO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.