[Cite as *State v. Aguirre*, 2012-Ohio-2014.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,            CASE NO.  13-11-19

      v.

JAMIE AGUIRRE,                  O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO.  13-11-20

      v.

JAMIE AGUIRRE,                  O P I N I O N

      DEFENDANT-APPELLANT.

Appeals from Seneca County Common Pleas Court
Trial Court Nos. 2010 CR 0015 and 10-CR-0037

Judgment Affirmed in Case No. 13-11-19

Judgment Affirmed in Part, Reversed on Part and
Cause Remanded in Case No. 13-11-20

Date of Decision:   May 7, 2012

Case Nos. 13-11-19 and 13-11-20

**APPEARANCES:**

    *Lisa A. Miller* **for Appellant**

    *Derek W. DeVine* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Jamie Aguirre ("Aguirre") brings this appeal from the judgment of the Court of Common Pleas of Seneca County. Aguirre claims that the trial court erred by 1) denying his motion to suppress; 2) denying his motion for acquittal; and 3) miscalculating the jail time credit. This court notes that this appeal is taken from two separate cases which were consolidated for the purposes of briefing and argument. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} On October 5, 2009, Officer John Pettit ("Pettit") and Officer Steve Gyoker ("Gyoker") were on patrol when they were dispatched to the area of Interstate 76 and State Route 43 for a possibly intoxicated driver. The dispatch was the result of an anonymous phone tip. Once in the area, they observed a vehicle matching the described one parked at a pay phone. When the vehicle departed, Pettit began following it. The vehicle then abruptly changed lanes in

front of Pettit and almost caused a collision as the vehicle attempted to enter I-76. Pettit then activated the overhead lights and initiated a traffic stop.

{¶3} After stopping Aguirre, Pettit became suspicious of Aguirre when he appeared to be taking a longer route than necessary home from a football game.[1] While speaking to Aguirre, Pettit noticed two cell phones in the console. Pettit questioned Aguirre as to why he was using a pay phone if he had two cell phones. Aguirre nervously responded that the phones were not working. Given that the area was one known for high drug trafficking, Pettit was suspicious and asked Aguirre for permission to search his vehicle. Aguirre consented. During the search, Pettit and Gyoker found various drug paraphernalia, five marijuana cigarettes, and other contraband. Aguirre was then arrested for possession of drugs and a tow truck was called to remove the vehicle. Before the tow truck arrived, Pettit and Gyoker conducted an inventory search of the vehicle and found additional items, including a wireless camera, a third cell phone, a pal trio phone with memory cards among other items.

{¶4} Once at the station, Aguirre was questioned concerning the contents of the phones and memory cards. Aguirre gave written consent to the officers permitting them to view them. The officers discovered videos of women undressing in a medical facility exam room, still pictures of a young boy without

---

[1] This court does not hold that merely avoiding the turnpike in favor of an interstate or any other legal route of travel is suspicious behavior, even if it takes longer.

-3-

clothing, and two videos of a young girl putting on underwear in a laundry room. The officers then obtained a warrant to further search the vehicle and discovered a photograph of a minor female with her breasts exposed. During a police interview, it was determined that the videos of the women were taken in Seneca County, Ohio.

{¶5} On January 27, 2010, a Seneca County Grand Jury indicted Aguirre with thirteen counts of illegal use of a minor in nudity oriented materials or performance, felonies of the second degree in violation of R.C. 2907.323, and fifty-nine counts of voyeurism, misdemeanors of the first degree in violation of R.C. 2907.08. This indictment resulted in case number 2010 CR 0015. A second indictment was issued on February 24, 2010, charging Aguirre with thirteen counts of illegal use of a minor in nudity oriented materials or performance, felonies of the second degree in violation of R.C. 2907.323. This indictment was assigned case number 2010 CR 0037. Aguirre entered pleas of not guilty to all charges. On March 17, 2010, the State filed a motion to dismiss counts 1-13 in case number 2010 CR 0015 because they were the same charges filed in case number 2010 CR 0037. The motion was granted by the trial court on March 18, 2010.

{¶6} On March 10, 2010, Aguirre filed motions to suppress in both cases. Amended motions to suppress were filed in both cases on June 9, 2010. A hearing

was held on the motions on August 31, 2010. At the hearing, both Aguirre and the State stipulated that the trial court would consider the transcript of a hearing on a motion to suppress and the exhibits from that hearing in Portage County and that no new evidence would be heard. The parties then submitted written briefs in support of their positions. On September 29, 2010, the trial court overruled the motions to suppress.

{¶7} On February 17, 2011, Aguirre waived his right to a jury trial. The trial in case number 2010 CR 0037 was held on March 1, 2011. Prior to the start of trial, Aguirre filed a motion in limine requesting that any evidence or images not the subject of one of the counts of the indictment would be excluded. This motion was overruled. The State filed a motion to dismiss count 13 of the indictment, which was granted. At the conclusion of the trial, the trial court found Aguirre guilty of the remaining 12 counts of the indictment. Aguirre then changed his pleas in case number 2010 CR 0015 to no contest pleas. On March 30, 2011, the trial court found Aguirre guilty of all counts in case number 2010 CR 0015. A sentencing hearing was held on May 13, 2011. The trial court sentenced Aguirre to eight years in prison on each count in case number 2010 CR 0037, with each sentence to be served concurrently. In case number 2010 CR 0015, Aguirre was sentenced to 180 days for each of the counts, with all counts to run concurrent to

Case Nos. 13-11-19 and 13-11-20

each other and to the counts in case number 2010 CR 0037. Aguirre appeals from

these judgments and raises the following assignments of error.

### First Assignment of Error

**The trial court erred to the prejudice of [Aguirre] by denying his motion to suppress evidence at trial on the grounds that the warrantless search of his automobile and resulting seizure of certain evidence incident thereto was in violation of [Aguirre's] rights and protections as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and by Article I, Section 14 of the Constitution of the State of Ohio.**

### Second Assignment of Error

**The trial court erred to the prejudice of [Aguirre] by denying [Aguirre's] criminal rule 29 motion for directed verdict of acquittal when there was insufficient evidence to prove the elements of the crime of illegal use of a minor in nudity oriented material or performance (counts one through twelve of the indictment), in violation of R.C. 2907.323, by proof beyond a reasonable doubt.**

### Third Assignment of Error

**The trial court erred to the prejudice of [Aguirre] by denying his motion for jail-time credit back to the date of his arrest in violation of his rights under the Fourteenth Amendment to the Constitution of the United States and by Article I, Section 14 of the Constitution of the State of Ohio for Equal Protection under the law.**

The appeal from case no. 2010 CR 0015 was assigned Appellate Case No. 13-11-19 and the appeal from case no. 2010 CR 0037 was assigned Appellate Case No. 13-11-20.

-6-

{¶8} In the first assignment of error, Aguirre claims that the trial court erred in denying his motion to suppress. This assignment of error applies to both appeal number 13-11-19 and 13-11-20. Aguirre argues that the officer's warrantless search of the vehicle violated his constitutional rights. This court notes that this exact same assignment of error was challenged in his appeal from the judgment of the Portage County Court of Common Pleas to the 11th District Court of Appeals. See *State v. Aguirre*, 11th Dist. No. 2010-P-0057, 2012-Ohio-644. This appeal is based on the same transcript as the one reviewed by the 11th District Court of Appeals.

{¶9} The review of a motion to suppress involves issues of both law and fact. *State v. Burnside*, 100 Ohio St.152, 2003-Ohio-5372, ¶ 8. The trial court acts as the trier of facts and is in the best position to weigh the evidence and evaluate the credibility of the witnesses[2]. *Id.* Thus, an appellate court must accept the trial court's findings of fact as long as they are supported by competent, credible evidence. *Id.* Then the appellate court may conduct a de novo review of the trial court's application of the law to those facts. *State v. Anderson*, 100 Ohio App.3d 688, 691 (4th Dist.1995)

{¶10} Like the Portage County Court of Common Pleas, the Seneca County Court of Common Pleas found that the officer had probable cause to stop the

---

[2] Interestingly, in this case the trial court did not hear the testimony or observe the witnesses. Instead, the trial court merely reviewed the trial transcript as this court will do as well.

vehicle and to continue the detention beyond the warning that was given.  The trial court made the following findings of fact.

**Officer John Pettit  * * * was notified by the dispatcher that the department had received a report of a white Ford pickup truck near the intersection of State Route 45 and Interstate 76 being operated by a suspected drunk driver.  As a result of that information, the officer observed a vehicle matching the description parked near a pay phone at the Quick Stop and the occupant of that vehicle was using the pay phone.  The driver of that vehicle, upon leaving the Quick Stop parking lot, pulled onto State Route 43 and proceeded southbound, stopping at the traffic signal where State Route 43 and Interstate 76 westbound intersect, after having pulled into the left lane.  Officer Pettit pulled out to follow the vehicle but stayed in the right lane.  When the light changed to green, the defendant made a right turn from the left lane and crossing the lane occupied by the patrolman to proceed onto the ramp to Interstate 76 West.  The officer had to apply his brakes in order to avoid colliding with the defendant's vehicle.**

**The patrolman activated his lights and stopped the defendant's vehicle on the freeway on-ramp, explaining to the defendant that he was stopped for making an improper turn.  As the officer spoke with the defendant at the driver's door, he was able to observe two cell phones in the center console of the vehicle.  He questioned the driver as to why he had used the pay phone at the Quick Stop since he obviously had two phones in his possession and readily available to him.  The driver's explanation was that one cell phone was not in good working order and that he didn't want to use the other cell phone because by so doing one girlfriend would have the ability to find out he was calling a second girlfriend.**

**Although the defendant did not have an odor of alcohol on or about his person, the officer did note that the defendant's eyes were red and glassy.  That, coupled with the officer's suspicions being aroused by the defendant's use of a pay phone in spite of having the use of cell phones at his disposal, prompted the**

-8-

**officer to ask the defendant if he could search the vehicle, even though a records search revealed no outstanding warrants for the defendant. The defendant consented to the search adding that the officer wouldn't find anything.**

**\* \* \***

**Clearly, law enforcement had the right to stop the defendant after the illegal turn. The rest simply followed. The Court listened to the interview. At no time did the defendant request an attorney.**

September 29, 2010 Judgment Entry, 1-3. A review of the record indicates that the facts found by the trial court were supported by competent, credible evidence. Additionally, a review of the transcript indicates that Pettit testified that Aguirre was "a little bit nervous, wouldn't make direct eye contact, looking around the vehicle, acted somewhat suspicious." Jan. 26, 2010, Motion to Suppress Tr., 11. Pettit further testified that although he did not believe Aguirre had been drinking, the red and glassy eyes made him believe that Aguirre may have been under the influence of drugs. Tr. 12. All of this evidence clearly indicates that the findings of fact by the trial court were supported.

{¶11} The next question is whether the trial court correctly applied the law to the facts. Aguirre claims that the extended detention was an illegal seizure under *State v. Robinette*, 80 Ohio St.3d 234 (1997). In *Robinette*, the Ohio Supreme Court held that a police officer does not have the authority to detain a suspect beyond the time to complete the initial stop to request and execute a search

without probable cause to do so. The officer in *Robinette*, did not provide any additional information beyond the reasons for the original stop upon which to base the request to search the vehicle. For that reason, the Court determined that the search was illegal. The Court did hold, however, that if during the initial stop the officer detects reasonably articulable facts giving rise to a suspicion of criminal activity, the detention may be extended for additional investigation. *Id*. at 241. This case is not like *Robinette* because the officer in this case was able to articulate facts which raised his suspicion of drugs. When asked what his probable cause was for extending the detention and requesting to search the vehicle, Pettit testified as follows.

> **The fact that, his nervousness, traveling on the Interstate, getting off the Interstate to use a pay phone with two working pay phones (sic) really led me to believe that he might be engaging in some kind of illegal drug activity, possibly a courier, possibly making a phone case to meet, contact somebody he doesn't want to be tracked to via the cell phones.**

Tr. 14. Specifically, the officer suspected that the red and glassy eyes might be the result of drug intoxication and Aguirre's behavior indicated that he might be engaged in criminal activity. This is sufficient suspicion to justify extending the search. "We conclude that, though the initial purpose for the stop came to an end when the officer decided not to give appellant a citation for the illegal turn, other circumstances came to the officer's attention during the stop to justify his continued investigation." *Aguirre*, *supra* at ¶ 38.

-10-

Case Nos. 13-11-19 and 13-11-20

{¶12} Aguirre also argues that even if the continued detention was valid, his consent to search the vehicle was not freely given. In general, a warrantless search based upon the consent of the defendant is permissible as long as the consent is voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The burden of proving by clear and convincing evidence that the consent was voluntarily given is on the prosecution. *Id*. "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229.

{¶13} Here, the only witness presented at the hearing on the motion to suppress was Pettit. He testified as follows.

> **After it was established he was a valid driver I had reason to believe there was something going on with Mr. Aguirre with the pay phone and just him getting off the Interstate to use it with two working cell phones, his red, glassy eyes. I asked him if he was involved in any kind of illegal drug activity, if there was (sic) any drugs in the vehicle. He said there wasn't. So at that time I'd given him his driver's license back and I said, "Would you give us consent to search your vehicle?"**
>
> **Mr. Aguirre says, "There is nothing in my truck, you can look if you want. You're not going to find anything," and he stepped out of the vehicle. At that time he went and stood with Officer Helmling in front of my patrol vehicle where he could see the**

> **search being conducted, and he stood with him then the whole time.**

Tr. 13-14. Thus, the only evidence before the trial court was that Aguirre was asked if they could search and he voluntarily said yes and exited the vehicle. No evidence was presented that the reason for the consent was due to a mere submission to a claim of lawful authority or was coerced in any manner. Aguirre also didn't present any evidence that he did not feel he was free to refuse the request and leave. Without some evidence to the contrary, the only evidence supports the trial court's determination that the consent to search the vehicle was voluntary. The first assignment of error is overruled.

{¶14} In the second assignment of error Aguirre claims that the trial court erred in denying his Crim.R. 29 motion for acquittal because there was insufficient evidence to prove the offenses. This assignment of error only applies to appeal number 13-11-20.[3] When determining whether there is sufficient evidence to support a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 (1991), ¶ 2 of the syllabus.

{¶15} Aguirre was convicted of twelve counts of illegal use of a minor in nudity oriented material in violation of R.C. 2907.323(A). All of the charges were

---

[3] Case number 13-11-19 was resolved by a finding of guilt following a no contest plea.

felonies of the second degree. R.C. 2907.323(A) states in pertinent part as follows.

**(A) No person shall do any of the following:**

**(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, unless both of the following apply:**

**(a) The material or performance is, or is to be, sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance;**

**(b) The minor's parents, guardian, or custodian consents in writing to the photographing of the minor, to the use of the minor in the material or performance, or to the transfer of the material and to the specific manner in which the material or performance is to be used.**

{¶16} A review of the record indicates that at no time did Aguirre have permission from any of the parents to possess the pictures of the children. The only real question is whether the photos depicted the minor's "in a state of nudity." This very question was addressed by the Ohio Supreme Court in *State v. Young,* 37 Ohio St.3d 249 (1988). In *Young*, the Court limited the definition of "a state of nudity" to one "where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals * * *." *Id.* at 252. See also *Osborne v.*

*Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (holding that R.C. 2907.323(A) was not overbroad since the Ohio Supreme Court limited the definition of nudity in *Young*). Several courts have required the definition of "state of nudity" as used in R.C. 2907.323 to include a lewd exhibition or involve a graphic focus on the genitals. *State v. Sullivan*, 2d Dist. No. 23948, 2011-Ohio-2976, ¶ 27; *State v. Dolman*, 6th Dist. No. WM-10-007, 2010-Ohio-5505; *State v. Graves*, 184 Ohio App.3d 39, 2009-Ohio-974 (4th Dist.); *State v, Huffman*, 165 Ohio App.3d 518, 2006-Ohio-1106 (1st Dist.); *State v. O'Connor*, 12th Dist. No. CA2001-08-195, 2002-Ohio-4122; *State v. Park*, 5th Dist. No. 00-CA-0110, 2001 WL 1771068 (Aug. 20, 2001); and *State v. Walker*, 134 Ohio App.3d 89, 94-95 (1999) (4th Dist.). The term "lewd" has been defined as follows:

> **1. a. Preoccupied with sex and sexual desire; lustful. B. Obscene; indecent. 2. Wicked.**

*The American Heritage Dictionary* 726 (2nd Ed. 1985).

{¶17} The majority of the images making up the charges in this case were x-rays, MRI images, or CT scan images in which images of genitalia may be seen, even though the victims were fully dressed when the image was made. The question before this court is whether the images show a "state of nudity" that includes a lewd exhibition or involves a graphic focus on the genitalia.

{¶18} Count One of the indictment alleged as follows:

> **On or about March 10, 2008 through February 6, 2009, in Seneca County, Ohio [Aguirre] did knowingly transfer material, to wit: one or more photographs of a minor, to wit: Jane Doe, #1, age 15-16, New Riegel, Ohio. Said Jane Doe #1 is not the child of [Aguirre] and said photographs display the child in a state of nudity and said photograph is lewd or has a graphic focus on the genitals.**

Feb. 24, 2010 Indictment, 1. In support of this assignment of error, the State presented Exhibit 1 which is an x-ray image of a hip socket. Given that this is an x-ray image, it does not meet the definition of lewd as it is not preoccupied with sex and sexual desire, lustful, obscene, indecent, or wicked. It is nothing more than an x-ray image regardless of to what use Aguirre may have put it. Without the lewd exhibition the image must have a graphic focus on the genitals to find a violation of the statute. The definition of graphic is something that is clearly set forth or described in vivid detail. *The American Heritage Dictionary* 573 (2nd Ed. 1985). This image does not focus on the genitals and the genitalia is barely discernible with no detail. Thus, there was not sufficient evidence to show that Exhibit 1 met the definition of the illegal use of a minor in nudity oriented material as required by law. For this reason, the trial court erred in finding the evidence sufficient to find Aguirre guilty of Count 1 of the indictment.

{¶19} Count Two of the indictment alleged as follows:

> **On or about August 31, 2006, * * * [Aguirre] did knowingly transfer material, to wit: one or more photographs of a minor, to wit: Jane Doe, #2, age 9, Tiffin, Ohio. * * ***

-15-

Feb. 24, 2010 Indictment, 2. The State presented Exhibits 2A and 2B in support of this count. The images again are medical images, but unlike Exhibit 1, Exhibits 2A and 2B do have a graphic focus on the genitalia of the minor. The minor's father testified as to the minor's birthdate and that Aguirre was not given permission to transfer the images for his personal use. Viewing this evidence in a light most favorable to the State, the evidence is sufficient to support a finding of guilty on Count Two.

{¶20} Count Three of the indictment alleged as follows:

**On or about January 30, 2008 through October 8, 2009, * * * [Aguirre] did knowingly transfer material, to wit: one or more photographs of a minor, to wit: Jane Doe, #3, age 12-14, New Riegel, Ohio. * * ***

Feb. 24, 2010 Indictment, 2. In support of this count, the State presented Exhibits 3A, 3B, 3C, 3D, 3E, and 3F. Images 3A, 3B, and 3C are photographs of the minor fully dressed, thus there is no nudity in them. However, images 3D, 3E, and 3F are medical images of the minor's pelvic region and the genitals are clearly visible. The State also presented the testimony of the minor's mother who testified as to the minor's birthdate and that Aguirre was not given permission to transfer the images for his personal use. Viewing this evidence in a light most favorable to the State, the evidence is sufficient to support a finding of guilty on Count Three.

{¶21} In Count Four of the indictment, the State alleged as follows:

-16-

**On or about March 15, 2007 through March 31, 2009, \* \* \* [Aguirre] did knowingly transfer material, to wit: one or more photographs of a minor, to wit: Jane Doe, #4, age 11-13, New Riegel, Ohio. \* \* \***

Feb. 24, 2010 Indictment, 2. The State presented Exhibits 4A, 4B, 4C, 4D, 4E, 4F, 4G, and 4H to prove this count. Exhibits 4D, 4E, and 4H are medical images that shows a shadowy outline of the breasts. However, there is no detail and it is not a lewd exhibition. It does not provide a graphic focus on the genitals. Thus, these photos do not meet the statutory definitions. However, Exhibits 4A, 4B, 4C, 4F, and 4G do have a graphic focus on the genitals. This meets the statutory requirements. Additionally, the State presented the testimony of the minor's mother who testified as to the minor's birthdate and that Aguirre was not given permission to transfer the images for his personal use. Viewing this evidence in a light most favorable to the State, the evidence is sufficient to support a finding of guilty on Count Four.

{¶22} Count Five of the indictment alleged as follows:

**On or about October 31, 2007 through December 15, 2008, \* \* \* [Aguirre] did knowingly transfer material, to wit: one or more photographs of a minor, to wit: Jane Doe, #5, age 15-16, Tiffin, Ohio. \* \* \***

Feb. 24, 2010 Indictment, 3. The State presented Exhibit 5 in support of this count. The minor in Exhibit 5 is shown to be six years of age.[4] The exhibit shows

---

[4] This court recognizes that the State failed to prove the facts alleged in the indictment, which claimed the child was 15-16 years of age, not 6 years of age. However, this was not raised by Aguirre at any time and

a medical image of the hip and pelvic area. The genital area is clearly visible. The father of the minor testified as to the minor's birthdate and that Aguirre did not have permission to transfer the image for his personal use. Viewing the evidence in a light most favorable to the State, the evidence is sufficient to support a finding of guilty on Count Five.

{¶23} Count Six of the indictment alleged as follows:

**On or about March 10, 2008 through May 29, 2009, * * * [Aguirre] did knowingly transfer material, to wit: one or more photographs of a minor, to wit: Jane Doe, #6, age 14-15, New Riegel, Ohio. * * ***

Feb. 24, 2010 Indictment, 3. The State presented Exhibits 6A, 6B, and 6C in support of this count. Exhibits 6A and 6B are medical images of the chest showing the spine, ribs, and internal organs. There are shadows that are likely the outline of the breast in 6A and what appears to be the underwire used in a bra in 6B. Exhibit 6C is a side view showing the spine, ribs, and internal organs. There is a shadow of the breasts. None of these images, given that they are x-rays, are lewd exhibitions and do not have a graphic focus on the genitals. Thus, the images do not meet the statutory definition of nudity as used in R.C. 2907.323(A). The evidence does not support a finding of guilty as to Count Six.

{¶24} Count Seven of the indictment alleged as follows:

---

does not change the facts that need to be proven to convict of the offense, i.e. that the image is that of a minor.

> **On or about January 31, 2008, \* \* \* [Aguirre] did knowingly transfer material, to wit: one or more photographs of a minor, to wit: Jane Doe, #7, age 12, Tiffin, Ohio. \* \* \***

Feb. 24, 2010 Indictment, 4. The State presented Exhibits 7A and 7B in support of this count. Both Exhibits show medical images focusing on the genitals of the minor. The minor's father testified as to the minor's birthdate and that Aguirre did not have permission to transfer the images for his personal use. Viewing the evidence in a light most favorable to the State, the evidence is sufficient to support a finding of guilty on Count Seven.

{¶25} Count Eight of the indictment alleged as follows:

> **On or about July 22, 2008 through December 1, 2008, \* \* \* [Aguirre] did knowingly transfer material, to wit: one or more photographs of a minor, to wit: Jane Doe, #8, age 13, Tiffin, Ohio. \* \* \***

Feb. 24, 2010 Indictment, 4. In support of this count, the State presented Exhibit 8. Exhibit 8 is a chest x-ray showing the spine, ribs, and internal organs. There is a shadowy outline of a breast. This is neither a lewd exhibition nor a graphic focus on the genitals. Thus, it does not meet the statutory requirements of R.C. 2907.323(A). The evidence is insufficient to support a conviction on Count Eight.

{¶26} Count Nine of the indictment alleged as follows.

> **On or about November 12, 2008 through September 8, 2009, \* \* \* [Aguirre] did knowingly transfer material, to wit: one or more photographs of a minor, to wit: Jane Doe, #9, age 12, Fostoria, Ohio. \* \* \***

Feb. 24, 2010 Indictment, 4. The State presented Exhibits 9A, 9B, 9C, 9D, 9E, and 9F in support of this count. All of these images show the minor in various states of undress. Although these images do not have a graphic focus on the genitals, they may be considered a lewd exhibition. The minor is in the process of undressing and her attire may be considered indecent. The minor's mother testified as to the minor's birthdate and that Aguirre did not have permission to transfer these images for his personal use. Viewing the evidence in a light most favorable to the State, the evidence is sufficient to support a finding of guilty as to Count Nine.

{¶27} Count Ten of the indictment alleged as follows.

**On or about January 15, 2008, * * * [Aguirre] did knowingly transfer material, to wit, one or more photographs of a minor, to wit, Jane Doe, #10, age 4, Tiffin, Ohio. * * ***

Feb. 24, 2010 Indictment, 5. In support of this claim, the State presented Exhibit 10. Exhibit 10 is a medical image including a pelvic x-ray. There is a clear image of the genitals in this photo. In addition, the father of the minor testified as to her birthdate and that Aguirre lacked permission to transfer these images for his personal use. Viewing the evidence in a light most favorable to the State, the evidence is sufficient to support a finding of guilty on Count Ten.

{¶28} As to Count Eleven, the indictment alleged as follows:

**On or about February 25, 2006 through April 23, 2008, * * * [Aguirre] did knowingly transfer material, to wit: one or more**

> **photographs of a minor, to wit: Jane Doe #11, age 8-10, Tiffin, Ohio. * * ***

Feb. 24, 2010 Indictment, 5. In support of this claim, the State presented Exhibit 11. Exhibit 11 is a pelvic x-ray. The genitals are clearly the focus of this image. In addition, the mother of the minor testified as to her birthdate and that Aguirre lacked permission to transfer these images for his personal use. Viewing the evidence in a light most favorable to the State, the evidence is sufficient to support a finding of guilty on Count Eleven.

{¶29} Finally, Count Twelve of the indictment alleged as follows.

> **On or about July 24, 2009, * * * [Aguirre] did knowingly transfer material, to wit: one or more photographs of a minor, to wit: Jane Doe #12, age 15, Fostoria, Ohio. * * ***

Feb. 24, 2010 Indictment, 6. The State presented Exhibit 12 in support of this count. Exhibit 12 is a medical image in which the genitals are clearly visible. The mother of the minor testified as to her birthdate and that Aguirre lacked permission to transfer these images for his personal use. Viewing the evidence in a light most favorable to the State, the evidence is sufficient to support a finding of guilty on Count Twelve.

{¶30} Having reviewed the record, the second assignment of error is sustained in part and overruled in part. The trial court properly overruled Aguirre's Criminal Rule 29 motion as to Counts Two, Three, Four, Five, Seven, Nine, Ten, Eleven, and Twelve. However, the evidence was insufficient to

support a conviction under R.C. 2907.323(A) for Counts One, Six, and Eight. Since all of the convictions were ordered to be served concurrently, this ruling has no effect on the sentence. "R.C. 2929.01(FF) defines a sentence as 'the sanction or combination of sanctions imposed by the sentencing court on an offender who is convicted of or pleads guilty to an offense.'" *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 12. In *Saxon*, the Ohio Supreme Court held that an appellate court "may not modify, remand, or vacate the entire multiple-offense sentence based upon an appealed error in the sentence for a single offense." *Id*. at syllabus. "No purpose can be served by forcing a sentencing judge to revisit properly imposed, lawful sentences based upon an error in the sentence for a separate offense." *Id.* at ¶ 21. Here, nine of the twelve convictions were lawful. Thus, there is no reason for the trial court to revisit those. Instead, this matter is remanded for the trial court to vacate the convictions on counts one, six and eight, which includes the sentences imposed. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 12.

{¶31} In his third and final assignment of error, Aguirre claims that the trial court erred in calculating his jail time credit. This assignment of error applies to both Case No. 13-11-19 and Case No. 13-11-20. Aguirre claims that the trial court erred by not awarding him credit for all the time spent in Portage County

Jail, not just the time after he was indicted in Seneca County. R.C. 2967.191 states in pertinent part:

> **The department of rehabilitation and correction shall reduce the stated prison term of a prisoner * * * by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, and confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's prison term.**

Aguirre argues that he was arrested in Portage County and charged there on the exact same set of facts for which he was charged in Seneca County and is therefore entitled to all time served. However, this court notes that in addition to the illegal use of a minor in nudity oriented material and the numerous voyeurism charges brought in Seneca County, Aguirre was also charged with various drug offenses in Portage County. Thus, there were additional facts involved in the Portage County case than in the Seneca County Case. A defendant is not entitled to jail-time credit on facts which are separate and apart from those on which the current sentence was based. *State v. Lynn*, 3rd Dist. No. 15-06-16, 2007-Ohio-3344, ¶ 8. The third assignment of error is overruled.

{¶32} The judgment of the Court of Common Pleas of Seneca County in Appeal No. 13-11-19 is affirmed. The judgment of the Court of Common Pleas of

Case Nos. 13-11-19 and 13-11-20

Seneca County in Appeal No. 13-11-20 is affirmed in part and reversed in part and

the matter is remanded for further proceedings in accord with this opinion.

*App. No. 13-11-19 Judgment Affirmed*

*App. No. 13-11-20 Judgment Affirmed in Part,*
*Reversed in Part and Cause Remanded*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**